**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SOUTHEAST CRESCENT SHIPPING
COMPANY; SOUTHEAST CRESCENT
TERMINAL COMPANY, INCORPORATED,
Petitioners,

v.

No. 98-2464

NATIONAL LABOR RELATIONS BOARD,
Respondent.

NATIONAL LABOR RELATIONS BOARD,
Petitioner,

v.

No. 98-2609

SOUTHEAST CRESCENT SHIPPING
COMPANY; SOUTHEAST CRESCENT
TERMINAL COMPANY, INCORPORATED,
Respondents.

On Petition for Review and Cross-application
for Enforcement of an Order
of the National Labor Relations Board.
(11-CB-16155, 11-CB-2483)

Argued: September 23, 1999

Decided: October 20, 1999

Before HAMILTON, LUTTIG, and WILLIAMS, Circuit Judges.

Petition for review denied and cross-application for enforcement granted by published opinion. Judge Luttig wrote the opinion, in which Judge Hamilton and Judge Williams joined.

_____

**COUNSEL**

**ARGUED:** Bruce McCoy Steen, MCGUIRE, WOODS, BATTLE & BOOTHE, L.L.P., Charlotte, North Carolina, for Petitioners. Christopher Warren Young, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Respondent. **ON BRIEF:** W. T. Cranfill, Jr., Robert B. Meyer, MCGUIRE, WOODS, BATTLE & BOOTHE, L.L.P., Charlotte, North Carolina, for Petitioners. Frederick L. Feinstein, General Counsel, Linda Sher, Associate General Counsel, John D. Burgoyne, Acting Deputy Associate General Counsel, Frederick C. Havard, Supervisory Attorney, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Respondent.

_____

**OPINION**

LUTTIG, Circuit Judge:

Petitioners Southeast Crescent Shipping Company and Southeast Crescent Terminal Company seek review of the National Labor Relations Board's determination that an employee with hiring authority refused to hire a worker because of his support of particular union leaders, in violation of sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act. Petitioners also contest the Board's decision that the hiring employee was a statutory supervisor for whose conduct they were responsible. The Board cross-petitions for enforcement of its order. Because we find substantial evidence in the record to support the Board's determinations, we deny the petition for review and grant enforcement of the Board's order.

I.

Petitioners Southeast Crescent Shipping Company and Southeast Crescent Terminal Company (collectively "Southeast") are party to a

2

hiring hall agreement with International Longshoremen's Association, Local 1426 ("Union"). Under the agreement, when Southeast needs a work crew for a particular job, it seeks the Union's recommendation for a "header," or senior employee to select and lead the crew. The header then forms a crew of men based on both their skills and a seniority plan.

In December of 1993, James Grady became a header, and selected Emmett Denkins as a member of his seven-man gang. By mid-March of 1994, it became clear that this gang would soon dissolve. Southeast subsequently decided to form a three-man gang, with Grady as header, to begin work on a new full-time project. Grady initially offered a position on this gang to Denkins.

In early April, Denkins signed a petition supporting Union trustee John Mackay, who had been appointed by the Union's international headquarters to run the Union in place of its president, Willie Sloan. The question whether Sloan or Mackay should head the Union was a divisive one among members, and Grady in particular was an outspoken supporter of Sloan. The petition that Denkins signed was regarded as "anti-Sloan" among union members, and Grady thus perceived Denkins as having "jumped the fence" separating the Sloan and Mackay camps by signing the petition.

In mid-July of 1994, Grady received a formal directive from Southeast to select two co-workers for the new gang. Although he had promised Denkins a position, Grady selected in Denkins' place a worker who had not signed the petition. Denkins filed a grievance with the Union upon discovering that he had been passed over. In late August, he met with Sloan, who told him that Grady had decided to replace him on the three-man gang because he had signed the petition. Another union member testified before the Administrative Law Judge (ALJ) that Grady had told him that Denkins would not be a member of the three-man gang because Denkins had signed the petition.

After the Union denied his grievance, Denkins filed a charge with the NLRB. An ALJ found that Southeast had committed an unfair labor practice under sections 8(a)(1) and (3) of the National Labor Relations Act (NLRA) by denying Denkins a place on the three-man gang. In so finding, the ALJ determined that Southeast was responsi-

3

ble for Grady's conduct both because Grady was a supervisor acting within the scope of his authority within the meaning of sections 2(2) and (11) of the NLRA, and alternatively because Southeast knew or should have known of Grady's discriminatory motive. Insofar as is relevant to this case, the Board adopted the ALJ's findings.

II.

Southeast claims that the record lacks substantial evidence to support the Board's finding that Grady declined to hire Denkins for a spot on the three-man gang because Denkins signed the petition. Such discrimination based on union activity constitutes an unfair labor practice under NLRA sections 8(a)(1) and (3), 29 U.S.C. §§ 158(a)(1) and (3). See NLRB v. Transportation Mgmt. Corp., 462 U.S. 393, 394 (1983).

This court must determine whether the Board's application of the law to the facts of this case is "supported by substantial evidence based upon the record as a whole." Pirelli Cable Corp. v. NLRB, 141 F.3d 503, 514 (4th Cir. 1997). "Substantial evidence `is such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

We find that the present record contains substantial evidence to support the Board's conclusion that Grady acted out of statutorily impermissible motives. Specifically, the record includes: 1) Union member King's testimony that Grady stated he decided not to give Denkins the job because Denkins had signed the petition, see J.A. 175; 2) Union member Walker's testimony that Grady angrily confronted Denkins about his decision to shift his support from Sloan to Mackay, see J.A. 186-87; and 3) Denkins' testimony that Grady had initially offered the job to him, and that Sloan stated that Denkins was denied the job because he had signed the petition, see J.A. 80.

Southeast offers two principal responses. First, it claims that the Board impermissibly relied on Denkins' self-interested testimony. We reject this argument both because Southeast can point to nothing in the record to suggest that Denkins' testimony was unreliable and because, as can be seen from the evidence noted above, the record

4

contains evidence from multiple sources that supports the Board's conclusion. Second, Southeast claims that Grady chose not to hire Denkins because of his belief that Denkins was not qualified to operate certain vehicles that the three-man gang would use. However, the record contains evidence that Denkins knew how to operate the relevant equipment, and that Grady knew of Denkins' qualifications in this regard. See J.A. 56. Moreover, once the General Counsel had made out a prima facie showing that the refusal to hire Denkins was based on his having signed the petition, Southeast had "the burden of proving by a preponderance of the evidence that, even though discriminatory animus was present, `the employer nonetheless would have taken the same employment action for legitimate reasons.'" See Medeco Security Locks, Inc. v. NLRB, 142 F.3d 733, 742 (4th Cir. 1998) (citation omitted). Given that Grady initially offered Denkins the position and refused to hire him only after he signed the petition, and the testimony in the record that Grady's specific reason for not hiring Denkins was that Denkins signed the petition, we do not believe that Southeast met its burden of proving by a preponderance of the evidence that Denkins would not have been hired even if he had not signed the petition.

III.

Southeast also claims that, even assuming Grady acted out of statutorily impermissible motives, the record lacks substantial evidence to support the Board's conclusion that Grady's decision not to hire Denkins was made in his capacity as a statutory supervisor for Southeast, thus rendering Southeast liable for Grady's conduct. We reject this claim as well.

For purposes of the NLRA, "[t]he term `employer' includes any person acting as an agent of an employer." NLRA§ 2(2), 29 U.S.C. § 152(2). When acting within the scope of his supervisory authority, a supervisor is such an agent. See NLRB v. Health Care & Retirement Corp., 511 U.S. 571, 578 (1994); Amalgamated Clothing Workers v. NLRB, 365 F.2d 898, 909 (D.C. Cir. 1966). Section 2(11) of the NLRA defines "supervisor" to include:

> [a]ny individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote,

5

discharge, assign, reward, or discipline other employees ... [if] the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

29 U.S.C. § 152(11). Thus, to be deemed a statutory supervisor, an individual must: 1) engage in one or more of the types of conduct enumerated in section 2(11), and 2) do so "in the interest of the employer."

In the present case, there is no question that Grady engaged in conduct covered by section 2(11): he hired workers for the three-man gang. Moreover, the record contains substantial evidence that Grady engaged in this conduct "in the interest of" Southeast. Most importantly, the record contains a letter indicating that Southeast chose Grady directly and informed the Union of Grady's appointment and authority to select qualified workers, see J.A. 449, rather than following the standard practice of asking the Union to recommend a header for the three-man gang. Indeed, counsel for Southeast conceded at oral argument that this letter establishes that the company directly selected Grady to hire two co-workers.

Southeast counters by relying on NLRB v. Master Stevedores Assoc. of Texas, 418 F.2d 140 (5th Cir. 1969), claiming that a hiring hall arrangement generally allows union headers to act in the interest of the union, rather than the employer, such that the arrangement does not evince sufficient kinship between header and employer to warrant attribution of the former's conduct to the latter. See id. at 142-43. However, this argument concerning the nature of hiring hall arrangements in general does nothing to controvert the evidence in the record that, with regard to the particular three-man gang at issue in this case, Grady was acting on the direct instruction of Southeast, not the Union.*

_____

*Because we find that the record contains substantial evidence to support the Board's conclusion that Grady acted within the scope of his supervisory authority in failing to hire Denkins, we need not address the Board's alternative rationale for holding Southeast responsible for Grady's conduct, that Southeast knew or should have known of Grady's impermissible motives.

6

CONCLUSION

For the reasons stated herein, we deny Southeast's petition for review of the Board's decision and order, and grant the Board's cross-petition for enforcement of its order.

It is so ordered

7